EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Maricarmen Márquez Colón<br>(TS-11,230) | 2017 TSPR 129<br><br>198 DPR ____ |

Número del Caso: AB-2014-0464

Fecha: 29 de junio de 2017

Abogada de la parte promovida:

      Por derecho propio

Oficina de Inspección de Notarías:

      Lcdo. Manuel Ávila De Jesús
      Director

Materia: La suspensión será efectiva el 10 de julio de 2017, fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Maricarmen Márquez Colón          **Núm.** AB-2014-0464
     (TS-11,230)

*PER CURIAM*

San Juan, Puerto Rico, a 29 de junio de 2017

En esta ocasión, nos corresponde determinar si la Lcda. Maricarmen Márquez Colón violó diversos Cánones del *Código de ética profesional*, así como ciertas disposiciones de la *Ley* y *Reglamento notarial*. Con tal de resolver, es necesario realizar un recuento detallado de los hechos que dieron lugar a la queja presentada en su contra, al igual que efectuar un examen del derecho sustantivo aplicable al caso. Veamos.

**I**

El 16 de marzo de 2010, el Sr. Francisco Valdés Pérez le vendió al matrimonio compuesto por su hijo, el Sr. Pedro E. Valdés Ortiz, y la esposa de éste, la Sra. Yidalis Nerys Arroyo, el solar número 23 del

bloque L de la Urbanización Bonneville Terrace en Caguas, Puerto Rico y el inmueble de dos (2) plantas que radicaba en este predio. Según lo estipulado, los compradores suscribieron un pagaré personal a favor del señor Valdés Pérez por $150,000.00 y le cedieron a éste el uso, disfrute o derecho a alquilar la primera planta del referido inmueble.[1]

Posteriormente, el 15 de mayo de 2013, la Lcda. Maricarmen Márquez Colón autorizó la Escritura Número 3 sobre Compraventa y Cesión de Derechos (Escritura Núm. 3). En ésta, compareció la señora Nerys Arroyo como parte vendedora y el señor Valdés Ortiz como parte compradora.[2] Mediante esta escritura, la señora Nerys Arroyo le vendió, cedió y traspasó al señor Valdés Ortiz su participación sobre el solar e inmueble en cuestión por $3,000.00.

Ahora bien, durante el mes de junio de 2013, el señor Valdés Pérez presentó ante el Tribunal de Primera Instancia una demanda contra la señora Nerys Arroyo, el señor Valdés Ortiz y otros. En lo pertinente, éste alegó que los demandados incumplieron el referido contrato de compraventa. La señora Nerys Arroyo y el señor Valdés Ortiz decidieron contratar a la licenciada Márquez Colón para que los representara en el pleito en cuestión. Por

---

[1] Este negocio jurídico se hizo constar en la Escritura Núm. 4 sobre Compraventa, autorizada por la Lcda. Wanda I. Medina Rivera.

[2] Aunque no surge de la Escritura Núm. 3, del expediente se desprende que el matrimonio de la señora Nerys Arroyo y el señor Valdés Ortiz se disolvió con anterioridad a la otorgación.

consiguiente, el 16 de septiembre de 2013, ésta presentó la contestación a la demanda.

Durante el transcurso del pleito, el 5 de febrero de 2014, la licenciada Márquez Colón autorizó la Escritura Número 2 sobre Donación (Escritura Núm. 2). A pesar del negocio jurídico que surge de la Escritura Núm. 3, se consignó en esta escritura que la señora Nerys Arroyo le donó al señor Valdés Ortiz el solar e inmueble antes descrito. Asimismo, cabe señalar que la licenciada Márquez Colón hizo constar en la escritura que: (1) la señora Nerys Arroyo era dueña en pleno dominio de la propiedad en cuestión; (2) que ésta había adquirido la propiedad por medio de la Escritura Núm. 80 de 2 de diciembre de 2010, autorizada por el Lcdo. Rafael Lasa; (3) que para la preparación de la escritura se utilizó un estudio de título preparado por un tercero con fecha de 4 de enero de 2006, y (4) que surgía del Registro de la Propiedad que la referida propiedad se encontraba inscrita a favor de la señora Nerys Arroyo en comunidad pro-indiviso con la Sra. Casimira Maldonado Ríos.

El 1 de diciembre de 2014, el señor Valdés Pérez presentó, ante este Tribunal, una queja en contra de la licenciada Márquez Colón. En síntesis, arguyó que la señora Nerys Arroyo, el señor Valdés Ortiz y la licenciada Márquez Colón confabularon para llevar a cabo una compraventa simulada. Para sustentar su alegación, arguyó que la señora Nerys Arroyo nunca fue dueña en pleno dominio de la

propiedad objeto de la Escritura Núm. 3 y que en esta escritura no se hizo constar la deuda de $150,000.00 que la señora Nerys Arroyo y el señor Valdés Ortiz habían suscrito a su favor.

El 20 de enero de 2015, la licenciada Márquez Colón compareció ante este Foro mediante una *Contestación a querella*. En síntesis, arguyó que la Escritura Núm. 3 no contenía un negocio jurídico simulado, pues no medió intención de defraudar y ésta se autorizó con anterioridad a la presentación de la demanda en cuestión. Por otro lado, planteó que no faltó a la fe pública notarial ya que investigó los hechos necesarios para conformar el negocio jurídico a la voluntad de las partes y realizó las advertencias correspondientes. Asimismo, aclaró que no consignó la existencia del pagaré privado suscrito por la señora Nerys Arroyo y el señor Valdés Ortiz a favor del señor Valdés Colón, tras razonar que la deuda no constituía un gravamen hipotecario.[3] Por último, alegó que la Escritura Núm. 3 no se había presentado en el Registro de

---

[3] Nótese que, el 18 de febrero de 2015, la licenciada Márquez Colón autorizó la Escritura Núm. 7 sobre Acta de Subsanación. En ésta informó que, por inadvertencia, autorizó la Escritura Núm. 3 sin discutir el tema de la deuda que existía entre las partes con relación a la propiedad. A esos efectos, anejó la Escritura Número 4, autorizada por la licenciada Medina Rivera, en la que se consignaron los términos de la deuda. Asimismo, hizo constar que la equivocación no causó daño alguno a las partes. Luego, el 28 de julio de 2015, la licenciada Márquez Colón autorizó la Escritura Número 25 sobre Acta de Subsanación. En ésta compareció el señor Valdés Ortiz y se reiteró el asunto de la deuda en la Escritura Núm. 3. Asimismo, se aclaró que el precio de compraventa fue de $75,000.00, en vez de $3,000.00.

la Propiedad, por lo que se limitaron los daños que el señor Valdés Pérez pudo haber sufrido y que las faltas existentes podían ser subsanadas.

El 6 de mayo de 2015, referimos el asunto a la Oficina de Inspección de Notarías (ODIN). Ahora bien, el 13 de julio de 2015, el señor Valdés Pérez presentó un escrito adicional ante la ODIN respecto a la queja de referencia. Además de reiterar sus señalamientos originales, le alertó a la ODIN sobre la presentación de la Escritura Núm. 2 sobre donación en el Registro de la Propiedad y sobre la existencia de varias escrituras de compraventa que autorizó la licenciada Márquez Colón respecto a un inmueble sito en el solar G-3 de la Urbanización Bonneville Gardens en Caguas, Puerto Rico.[4]

---

[4] Con relación a las escrituras de compraventa referentes al inmueble sito en el solar G-3 de la Urbanización Bonneville Gardens en Caguas, Puerto Rico, la licenciada Márquez Colón arguyó que el señor Valdés Pérez no ostentaba legitimación activa para solicitar un remedio, pues éste no tenía relación o interés alguno respecto a la propiedad. Por otro lado, ésta planteó que luego de autorizar una escritura de compraventa, tuvo que autorizar una escritura de recisión y compraventa con tal de dejar la primera escritura sin efecto y adecuar las particularidades del negocio jurídico a las necesidades de las partes. La ODIN consideró que el planteamiento de la licenciada Márquez Colón tenía mérito. No obstante, expresó que "nos preocupa sobremanera que la Querellada esgrimiera como defensa el que autorizó un instrumento público siguiendo las instrucciones de una institución bancaria, un fundamento que lacera lo recogido en el Artículo 3 de la Ley Notarial sobre la autonomía e independencia que debe emular todo profesional que ejerza la Notaría". *Informe*, en la pág. 20 (citas omitidas). Esta 'explicación' de la licenciada Márquez Colón es a todas luces inaceptable, pero sobre todo, preocupante. Acusa un desconocimiento básico de sus responsabilidades como notario y chocan frontalmente con el Artículo 3 de la *Ley notarial* como correctamente apunta la ODIN.

Posteriormente, la licenciada Márquez Colón presentó una *Contestación a escrito con fecha de 13 de julio de 2015*. En lo que nos concierne, ésta informó que la Escritura Núm. 2 fue un error y que fue el señor Valdés Ortiz el que la presentó ante el Registro de la Propiedad. Asimismo, aclaró que una vez se enteró de tal proceder, retiró la escritura.

El 18 de octubre de 2016, emitimos una *Resolución* mediante la cual se le concedió un término de veinte (20) días a la ODIN para que rindiera su informe sobre la queja. A esos efectos, el 24 de octubre de 2016, la ODIN presentó su *Informe* para la consideración de este Tribunal. En éste, se realizó un recuento de todos los hechos reseñados y se concluyó que la licenciada Márquez Colón:

1. Incumplió con lo dispuesto en el Canon 35 de Ética Profesional y el Artículo 2 de la Ley Notarial al autorizar instrumentos públicos cuyos negocios jurídicos son incompatibles, por lo que ella conocía que entre las partes se realizó un negocio jurídico diferente al contenido en las escrituras autorizadas;

2. Incumplió con lo dispuesto en la Regla 5 del Reglamento Notarial al asumir la representación legal de una de las partes otorgantes en un caso relacionado a los diversos instrumentos públicos por ella autorizados;

3. Incumplió con el Artículo 29 de la Ley Notarial y la Regla 39 del Reglamento Notarial;

---

No obstante, concluimos que el señor Valdés Pérez no tiene relación alguna con los negocios jurídicos en cuestión, por lo que no evaluaremos los méritos de este planteamiento.

4. Incumplió con lo establecido en el Artículo 39 de la Ley Notarial y en la Regla 49 al no conocer lo allí requerido para certificar copias de los documentos que ha autorizado; y

5. Entorpeció de manera reiterada e injustificada la labor investigativa de la ODIN en el proceso de cumplir con lo dispuesto en la Regla 14 (D) del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, aspecto que representa una infracción al Canon 9 de Ética Profesional. *Informe*, en la pág. 22 (citas omitidas).

Así pues, la ODIN le recomendó a este Tribunal que se evaluara la posibilidad de imponer sanciones severas en contra de la licenciada Márquez Colón. En particular, sugirió que se le censurara enérgicamente o se le suspendiera por tres (3) meses del ejercicio de la notaría.

El 9 de noviembre de 2016, mediante *Resolución*, le concedimos a la licenciada Márquez Colón un término de veinte (20) días para que se expresara en torno al *Informe* presentado por la ODIN. El 30 de noviembre de 2016, ésta compareció mediante escrito intitulado *R[é]plica al informe de ODIN*.

En síntesis, la licenciada Márquez Colón arguyó -respecto a la incompatibilidad de funciones- que renunció a la representación legal de la señora Nerys Arroyo y el señor Valdés Ortiz tan pronto identificó que el pleito presentado por el señor Valdés Pérez podía estar relacionado de alguna forma con el negocio jurídico autorizado mediante la Escritura Núm. 3. De otra parte, planteó que la autorización de la Escritura Núm. 2 sobre

donación fue un error, que le explicó al señor Valdés Ortiz que ésta no podía coexistir con la compraventa ya efectuada y puntualizó que retiró la escritura del Registro de la Propiedad una vez se enteró que el señor Valdés Ortiz la había presentado. Por último, admitió que erró al no consignar la información relacionada con el pagaré personal en la Escritura Núm. 3. Pero, reiteró que dicho error se remedió mediante las dos (2) actas de subsanación que autorizó durante el año 2015.

## II

### A

El desempeño de la función notarial supone una labor inherentemente pública. A esos efectos, la *Ley notarial* autoriza al notario a "dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales". 4 LPRA sec. 2002. Asimismo, éste está llamado a recibir e interpretar la voluntad de los otorgantes con tal de darle forma y autoridad legal. *Id*. Al así obrar, el notario se convierte en el guardián de la fe pública. Véase *In re: González Maldonado*, 152 DPR 871 (2000).

De otra parte, hemos reconocido que la función notarial juega un papel esencial en el tráfico jurídico. Por ello, el notario tiene que "ser en extremo cuidadoso, así como desplegar sumo esmero y celo en su desempeño profesional". *In re: González Maldonado*, 152 DPR en la pág.

897. Así, pues, se requiere del notario un estricto cumplimiento con la *Ley* y *Reglamento notarial*, el *Código de ética profesional* y los demás preceptos sustantivos que rigen los negocios jurídicos a los que éstos dan forma. Véase *Feliciano v. Ross*, 165 DPR 649, 657 (2005); *In re: Torres Olmeda*, 145 DPR 384 (1998).

En consecuencia, el notario tiene la obligación de propiciar y asegurar que las partes, al realizar un negocio jurídico, estén debidamente informadas sobre los pormenores del acto que llevarán a cabo. Véase *Chévere v. Cátala*, 115 DPR 432, 436-437 (1984). Asimismo, éste "tiene que cerciorarse de hacerles a las partes todas aquellas explicaciones, aclaraciones y advertencias necesarias para logar el consentimiento informado de los otorgantes". *In re: Jiménez Brackel*, 148 DPR 287, 295 (1999).

Con tal de cumplir con ello, "la fe pública notarial impone al notario el deber de hacer las averiguaciones mínimas que requieren las normas de la profesión al momento de autorizar el otorgamiento de la escritura". *In re: Torres Alicea*, 175 DPR 456 (2009). Véase, además, *In re: Vera Vélez*, 148 DPR 1 (1999). Inclusive, en casos donde el notario tenga duda sobre lo expresado por un otorgante, tiene la obligación de indagar más allá de lo requerido. Véase *Feliciano v. Ross*, 165 DPR en la pág. 659.

Cónsono con lo anterior, hemos reafirmado que el notario, además, tiene que conocer los antecedentes registrales de una propiedad. *Id*. Sin ello, "no podrá

ejercer cabalmente su deber de información a los otorgantes 'y habrá traicionado la fe de la que es principal guardador'". *In re: Ortiz Gutierrez*, 153 DPR 271, 277 (2001) (citas omitidas).

Sin duda, el incumplimiento con los referidos deberes no sólo supone un quebranto de los preceptos jurídicos del Derecho Notarial, sino que igualmente constituye un incumplimiento con los principios deontológicos que rigen la profesión legal. En lo que nos concierne, el Canon 35 del *Código de ética profesional* dispone que:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
>
> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.
>
> El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas. El destruir evidencia documental o facilitar la desaparición de evidencia testifical en un caso es también altamente reprochable.

En esencia, este canon requiere una actuación sincera y honrada de parte del profesional del Derecho tanto en el ejercicio de la abogacía como en su función notarial. *In re: Vera Vélez*, 148 DPR en la pág. 8. Además, es necesario subrayar que en el contexto de la notaría, hemos expresado

que la certificación de un hecho falso es una de las faltas más nocivas en que puede incurrir un notario. Véase *In re: Vargas Velázquez*, 193 DPR 681 (2015); *In re: Ayala Oquendo*, 185 DPR 572, 581 (2012); *In re: Tejada Rivera I*, 155 DPR 175 (2001). Asimismo, precisamos que "se infringe este deber por el simple hecho de faltar a la verdad, independientemente de los motivos de la falsedad, pues no es necesario que se haya faltado a la verdad deliberadamente o con la intención de defraudar o engañar". *In re: Peña Santiago*, 185 DPR 764 (2012). Por tanto, "es imprescindible que el notario observe la mayor pureza y honestidad en el descargo de la fe pública notarial". *In re: Ramos*, 104 DPR 568, 570 (1976).

**B**

El deber del notario para con la fe pública cimenta la distinción existente entre el ejercicio de la notaría y la práctica de la abogacía. *In re: Colón Ramery I*, 133 DPR 555 (1993). En ciertas instancias, este contraste produce una incompatibilidad entre ambas funciones que debe ser estrictamente observada por el notario. En lo pertinente, destacamos que la Regla 5 del *Reglamento notarial* prohíbe que un notario, en su carácter individual, actúe como abogado cuando:

> El notario autorizante de un documento público está impedido de actuar posteriormente como abogado de una de las partes otorgantes para exigir en un litigio contencioso las contraprestaciones a que se haya obligado cualquier otra parte en el documento otorgado ante él.

Esta regla tiene el propósito de "proteger la apariencia profesional de los notarios y evitar que su conducta como depositario de la fe pública notarial sea maculada por escepticismos de impropiedad y desconfianza". *In re: Martínez Almodovar*, 180 DPR 805, 826 (2011). Ello, pues el notario puede dar "la falsa impresión de que siempre estuvo parcializado con la parte en representación de la cual reclama". *In re: Colón Ramery I*, 133 DPR en la pág. 567. Véase, además, *In re: Cardona Álvarez*, 133 DPR 588, 593 (1993).

Ahora bien, es preciso destacar que aun en los casos en que la participación como abogado o notario no estuviese proscrita de manera específica por la Regla 5 del *Reglamento notarial*, éste tiene la responsabilidad de ponderar si debe intervenir. A esos efectos, el último párrafo de la Regla 5 dispone que:

> Queda siempre al sano juicio del notario y sus socios o compañeros de oficina, dentro de su responsabilidad profesional, decidir cuándo deben abstenerse de actuar aun en casos en que su actuación estuviere permitida, pero que por sus particulares circunstancias en la dimensión ética podrían generar un potencial de conflicto o la apariencia de conducta impropia. 4 LPRA Ap. XXIV, R. 5.

Ciertamente, al realizar esta evaluación, la introspección del notario tiene que estar guiada por la imparcialidad que está llamado a salvaguardar. Recuérdese que el notario no puede, en ningún caso, anteponer los intereses de uno u otro de los otorgantes. Véase *In re: Jiménez Brackel*, 148 DPR en la pág. 295; *In re: Meléndez*

*Pérez*, 104 DPR 770, 772 (1976). A fin de cuentas, la lealtad del notario es con la ley y la verdad, no con las partes. *In re: Molina Fragosa*, 166 DPR 567 (2005); *In re: Avilés, Tosado*, 157 DPR 867, 886 (2002).

## III

### A

Según los hechos reseñados, la licenciada Márquez Colón autorizó la Escritura Núm. 3 sobre compraventa y cesión. En ésta, la señora Nerys Arroyo vendió, cedió y traspasó el solar número 23 del bloque L de la Urbanización Bonneville Terrace en Caguas, Puerto Rico, al señor Valdés Ortiz. Se puede constatar que en la sección intitulada "T[Í]TULO, CARGAS Y GRAV[Á]MENES" la licenciada Márquez Colón consignó que la propiedad estaba libre de gravámenes.

Comenzado el proceso disciplinario, la licenciada Márquez Colón especificó en sus comparecencias que en la referida sección de la escritura no se hizo referencia a la deuda de $150,000.00 que suscribió la señora Nerys Arroyo y el señor Valdés Ortiz a favor del señor Valdés Pérez, ya que ésta era una obligación personal. No obstante, posteriormente la licenciada Márquez Colón concluyó que ello fue un error, por lo que durante el año 2015, autorizó dos (2) actas de subsanación en las que hizo constar este hecho y anejó la Escritura Núm. 4 de la que surgía esta obligación.

Según narramos, en la Escritura Núm. 4, autorizada por la licenciada Medina Rivera, el señor Valdés Pérez le

vendió la propiedad a la señora Nerys Arroyo y el señor Valdés Ortiz, mientras éstos estaban casados entre sí, por la cantidad de $150.000.00. Según se consignó en esta escritura, la deuda se hizo constar en un pagaré personal.[5] Asimismo, las partes estipularon que "[e]n consideración a que la parte vendedora [el señor Valdés Pérez] no impone intereses sobre la deuda, la parte compradora cede a la parte vendedora el uso, disfrute o el derecho a alquilar la primera planta del inmueble". *Informe*, Anejo VI, en la pág. 23.

La ODIN concluyó que la licenciada Márquez Colón venía obligada a consignar en la Escritura Núm. 3 estas obligaciones. A esos efectos, determinó que la licenciada Márquez Colón "faltó a su deber de establecer los antecedentes del inmueble objeto del negocio jurídico del instrumento público que autorizó y falló al deber de fiducia de la fe notarial de la que se encuentra investida al dar fe de un hecho incorrecto, cuya corroboración s[ó]lo dependía de revisar el instrumento público mediante el que las partes habían adquirido la propiedad en controversia". *Informe*, en la pág. 16. Con tal de determinar si la licenciada Márquez Colón incumplió con sus deberes como notaria respecto a este particular, es preciso examinar los

---

[5] Cabe recordar que un pagaré es "una promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden" si cumple con ciertos requisitos. 19 LPRA sec. 504.

principios sustantivos que fundamentan estas obligaciones.
Veamos.

i

Existen diferencias fundamentales entre los derechos reales y los derechos personales o de crédito. Los primeros, son aquellos que le permiten a un titular "realizar actos de uso, disfrute y disposición que afectan de manera directa al objeto económico del derecho". José Puig Brutau, *Fundamentos de Derecho Civil* 11, T. III Vol. I (3ra ed. 1989). En contraste, el derecho de crédito se limita a conferir la facultad a un sujeto para exigir de otro el despliegue de determinada conducta. Véase *Dennis, Metro Invs. v. City Fed. Savs.*, 121 DPR 197, 214 n. 13 (1988).

Al amparo de estos conceptos jurídicos es que tenemos que evaluar el significado de los términos "cargas y gravámenes". De ordinario, éstos se utilizan para identificar "limitaciones, responsabilidad y obligaciones de carácter real que afectan a la cosa o derecho, objeto [de un] contrato, cualquiera que fuese su origen, incluso fiscal". Miguel A. Del Arco Torres, Manuel Pons González *Diccionario De Derecho Civil* 195, 669 (1999). Por tanto, comúnmente, un derecho de crédito no constituye una carga o gravamen.

En el expediente del caso no obra una copia del pagaré suscrito por las partes. Es más, la ODIN especificó en su informe que el señor Valdés Pérez destruyó el pagaré.

*Informe*, en la pág. 6. Sin información adicional, es forzoso concluir que la obligación que se consignó en éste era una estrictamente personal. Por tanto, la licenciada Márquez Colón no tenía la obligación de hacer constar esta deuda en la escritura como un gravamen sobre la propiedad.

## ii

Ahora bien, según comentamos, la señora Nerys Arroyo y el señor Valdés Ortiz también se obligaron a concederle al señor Valdés Pérez el uso, disfrute o derecho a alquilar el primer piso del inmueble sito en la finca en cuestión. Ello, a cambio de que el señor Valdés Pérez no impusiera intereses sobre el precio de compraventa de la propiedad.

En primer lugar, nuestro ordenamiento jurídico reconoce el derecho de uso. En particular, el *Código Civil de Puerto Rico* lo define como "el derecho concedido a una persona para disfrutar graciosamente de una cosa perteneciente a otra, o para percibir una porción de los frutos que ella produzca, en cuanto fuere bastante para las necesidades del usuario y de su familia". 31 LPRA sec. 1591. Cabe destacar que este derecho constituye una carga real. Véase *Iglesia Católica v. Pueblo*, 11 DPR 470 (1906); Luis Díez-Picazo *Fundamentos del Derecho Civil Patrimonial* 229, T. VI (2012); Marecel Planiol, Georges Ripert *Tratado Elemental de Derecho Civil* 472-473 (2003).

Por otro lado, el arrendamiento, de ordinario, sólo genera una obligación personal entre las partes. Véase *Ponce Real Estate Corp. v. Registrador*, 87 DPR 215 (1963).

Claro está, satisfechos ciertos requisitos, nuestro ordenamiento jurídico reconoce que el arrendamiento puede tener acceso al Registro de la Propiedad y, al así hacerlo, adquirir carácter real. Véase *Garage Cooperativo de Sabana Grande v. Arco Caribbean*, Inc., 111 DPR 52 (1981). Véase, además, Luis R. Rivera Rivera en las págs. 423-425.

Por tanto, el derecho de "uso y disfrute" concedido al señor Valdés Pérez, en tanto un derecho real, constituye una carga o gravamen que afecta la propiedad en cuestión. Por tanto, la licenciada Márquez Colón tenía la obligación de consignar ese derecho en la Escritura Núm. 3. Ahora bien, no podemos concluir lo mismo sobre la facultad que la señora Nerys Arroyo y el señor Valdés Ortiz le confirieron a éste para arrendar la primera planta del inmueble sito en la propiedad. Ello, pues, consideramos que tal facultad no constituyó un 'arrendamiento' que cumple con los requisitos particulares para ser considerado un derecho real.

**B**

De otra parte, el 5 de febrero de 2014, la licenciada Márquez Colón autorizó la Escritura Núm. 2 sobre donación. Según reseñamos, en ésta la señora Nerys Arroyo le donó al señor Valdés Ortiz la misma propiedad objeto de la compraventa consignada en la Escritura Núm. 3. Aunque la licenciada Márquez Colón arguyó que tanto la redacción de la escritura como su presentación en el Registro de la Propiedad fue un error, lo cierto es que ésta se autorizó debidamente. Por tanto, la Escritura Núm. 2 es un documento

público que tiene que cumplir rigurosamente con las normas de derecho aplicables. No obstante, tras examinarla, concluimos que ésta adolece de graves faltas.

En primer lugar, destacamos que la licenciada Márquez Colón hizo constar en la Escritura Núm. 2 que la señora Nerys Arroyo era dueña en pleno dominio de la propiedad a ser donada. Este hecho, ciertamente, es falso. Ello, pues, mediante la Escritura Núm. 3 el señor Valdés Ortiz se convirtió en el único titular de la propiedad en cuestión.

Por otro lado, se consignó en la referida escritura que la señora Nerys Arroyo adquirió la propiedad "mediante la escritura pública número ochenta y otorgada el día dos de diciembre del a[ñ]o dos mil diez, ante el Notario Público Rafael Lasa". *Informe*, Anejo XI, pág. 2. Lo anterior también es falso. Según constatamos, las partes le compraron la propiedad al señor Valdés Pérez, el 16 de marzo de 2010, mediante la Escritura Núm. 4 autorizada por la licenciada Medina Rivera.

De otra parte, la licenciada Márquez Colón hizo constar que advirtió a los otorgantes que el inmueble aparecía inscrito en el Registro de la Propiedad en comunidad pro-indiviso con la Sra. Casimira Maldonado Ríos. Ahora bien, esto no surge de ninguno de los estudios de título o escrituras que obran en el expediente del caso. Por tanto, determinamos que este hecho no encuentra apoyo en el expediente de este caso. Por último, hacemos constar que la licenciada Márquez Colón consignó que, para

autorizar la Escritura Núm. 2, utilizó un estudio de título que había preparado un tercero hacía ocho (8) años, a saber el 4 de enero de 2006.[6]

Al consignar estos hechos falsos en un documento público debidamente autorizado, la licenciada Márquez Colón

---

[6] Resulta preocupante que, para redactar la Escritura Núm. 2, la licenciada Márquez Colón descansara en un estudio de título que tenía una antigüedad de ocho (8) años. Según comentamos, es el deber del notario conocer el estado registral de la propiedad con tal de orientar a las partes sobre éste, al momento de realizar un negocio jurídico. Como custodio de la fe pública registral y previo a autorizar una escritura pública, el notario debe hacer "las averiguaciones mínimas" correspondientes sobre las constancias registrales de "la propiedad" objeto de su escritura. *In re: Torres Alicea*, 175 DPR 456, 460 (2009). Esas diligencias se pueden llevar a cabo mediante un estudio de título. *Id.* Ahora bien, consideramos irresponsable no utilizar el estudio de título más reciente al momento de realizar la función notarial. Tal proceder puede tener el efecto de demostrarle a los otorgantes un estado registral que no guarda relación con la realidad registral al momento de autorizar la escritura. Sin duda, esto puede conllevar serios perjuicios a las partes.

Conviene destacar que el notario, además, tiene mecanismos adicionales para dar cumplimiento a este deber. En este sentido, el notario puede solicitar del Registrador de la Propiedad una Certificación Registral en la que se plasme "el contenido de los asientos que constan en el Registro". 30 LPRA sec. 6361. Una vez se realice la solicitud, el Registrador **está compelido** a expedir la certificación dentro de un plazo de caducidad que no será "mayor de sesenta (60) días". Este plazo corto de **caducidad**, que por su propia naturaleza es improrrogable, cumple una función importante pues evita dilaciones innecesarias en la realización de los negocios jurídicos. 30 LPRA sec. 6368.

De igual forma, el notario tiene a su disposición el Registro Inmobiliario Digital y la aplicación registral Karibe, para, entre otras cosas, acceder al Registro de la Propiedad desde su oficina y tomar constancia de toda información relacionada con las propiedades inmuebles del País. Esta aplicación le ofrece a todo notario la información más actualizada respecto a las constancias del Registro. Así, Karibe se revela como una herramienta imprescindible para todo notario.

quebrantó el Canon 35 de *Ética profesional*. Recuérdese que, "[c]ualquier hecho aseverado en un instrumento público por un notario que no concuerde con la verdad constituye una violación al Canon 35 del Código de Ética Profesional, independientemente de si hubo intención de faltar a la verdad". *In re: Torres Villanueva*, 168 DPR 185, 191 (2006) (citas omitidas).

El argumento de la licenciada Márquez Colón de que la autorización de la Escritura Núm. 2 fue un error, no excusa su actuación. Ello, pues, "[e]l notario es responsable de la legalidad de los documentos que autoriza, tanto en el aspecto formal como en el sustantivo". *In re: Martínez Sotomayor*, 189 DPR en la pág. 499. Véase, además, *In re: Torres Alicea*, 175 DPR en la pág. 460. Nótese que, incluso, una violación al Canon 35 de *Ética profesional* "puede ser el resultado de un desempeño profesional carente de la cautela y el celo que demanda la función pública del notario o de una confianza desmesurada en las manifestaciones de otros compañeros de la profesión". *In re: Vera Vélez*, 148 DPR en la pág. 8.

De otra parte, el señor Valdés Pérez alegó en la queja que la licenciada Márquez Colón ayudó a la señora Nerys Arroyo y al señor Valdés Ortiz a realizar un negocio simulado. En esencia, una simulación es "el acto o negocio jurídico que por acuerdo de las partes se celebra exteriorizando una declaración recepticia no verdadera para engañar a terceros, sea que ésta carezca de todo contenido,

o bien que esconda uno verdadero diferente al declarado". *Díaz García v. Aponte Aponte*, 125 DPR 1, 8 (1989) (citas omitidas). Ciertamente, el notario atenta contra sus deberes si sirve de instrumento para las partes otorgantes con tal de lograr un fin que no era el expresado en la escritura. Véase *In re: Torres Villanueva*, 168 DPR en la pág. 189. Por tanto, "[n]uestro ordenamiento jurídico condena enérgicamente la participación consciente de un notario en el asesoramiento, redacción u otorgamiento de documentos simulados o faltos de veracidad, independientemente del propósito que anime dicha conducta". *Id*. en la pág. 190. Véase, también, *In re: Peña Santiago*, 185 DPR 764, 780 (2012).

Respecto a este particular, la ODIN concluyó que al autorizar la Escritura Núm. 2 sobre donación, y tras haber autorizado la Escritura Núm. 3 sobre compraventa referente a la misma propiedad, "entre los otorgantes pudo haberse configurado una transacción simulada de contrato". *Informe*, en la pág. 18. Coincidimos con la ODIN en que esta actuación levanta suspicacia, no obstante, consideramos que del expediente no surge evidencia clara, robusta y convincente para determinar que –en efecto– las actuaciones de las partes fueron conducentes a un negocio simulado.

**C**

Por otro lado, la ODIN concluyó que la licenciada Márquez Colón incumplió con la Regla 5 del *Reglamento notarial*. En particular, la ODIN razonó que el litigio que

presentó el señor Valdés Pérez en contra de la señora Nerys Arroyo y el señor Valdés Ortiz se relacionaba con la propiedad objeto de las escrituras autorizadas por la licenciada Márquez Colón. Por tanto, "[l]a querellada debió abstenerse de representar a las partes demandadas del caso mencionado por cuanto bajo las circunstancias particulares la 'dimensión ética pod[ía] generar un potencial conflicto o la apariencia de conducta impropia". *Informe*, en la pág. 19.

En lo que nos concierne, el señor Valdés Pérez arguyó en su demanda que la señora Nerys Arroyo y el señor Valdés Ortiz incumplieron el contrato que se consignó en la Escritura Núm. 4 autorizada el 16 de marzo de 2010 por la licenciada Medina Rivera. En particular, adujo que éstos no realizaron los pagos pactados respecto a la compraventa de la propiedad y que le imposibilitaron su derecho al uso de la primera planta del inmueble.

Según reseñamos, "la práctica de la profesión de abogado es incompatible con la práctica de la notaría cuando ambas intervenciones del abogado-notario traten sobre el mismo asunto". *In re: Avilés, Tosado*, 157 DPR en la pág. 886. Ello es así pues es imprescindible evitar que se trastoque la presunción de imparcialidad que impera el ejercicio del notariado y la fe pública. *In re: Colón Ramery II*, 138 DPR 793, 797 (1995). Ahora bien, tras examinar los méritos del pleito presentado ante el Tribunal de Primera Instancia, concluimos que la participación de la

licenciada Márquez Colón como representante legal de la señora Nerys Arroyo y el señor Valdés Ortiz no se ajusta a los supuestos que prohíbe la Regla 5 del *Reglamento notarial*. A saber, ésta no intervino como abogada en un pleito donde las partes exigían contraprestaciones consignadas en una escritura que ésta autorizó.

De otra parte, según discutimos, aun en instancias en las que la intervención del notario como abogado no está prohibida, éste tiene que evaluar si su actuación podría generar un potencial de conflicto de interés o la apariencia de conducta impropia.

Surge del expediente que la licenciada Márquez Colón asumió la representación legal de la señora Nerys Arroyo y el señor Valdés Ortiz durante el mes de agosto de 2014. Posteriormente, conforme a su mejor criterio, ésta renunció a la representación legal durante el mes de julio de 2015. Contrario a la ODIN, según la información que obra en expediente, concluimos que la licenciada Márquez Colón no actuó de forma tal que pudiese generar un conflicto de interés como tampoco ejecutó alguna acción que creara una apariencia de conducta impropia. Por tanto, la licenciada Márquez Colón no violó la normativa consagrada en la Regla 5 del *Reglamento notarial*.

**D**

Discutido lo anterior, resta por considerar los demás señalamientos que realizó la ODIN respecto a la conducta de la licenciada Márquez Colón. En síntesis, la ODIN arguyó

que durante la investigación la licenciada Márquez Colón tardó en presentar los documentos que se le habían solicitado. Asimismo, informó que ésta los entregó de forma incompleta en varias ocasiones y que desconocía cómo certificar copias de las escrituras públicas, a tenor con las disposiciones de la *Ley* y *Reglamento notarial*. Por último, la ODIN concluyó que la licenciada Márquez Colón incumplió con el Artículo 29 de la *Ley notarial* y la Regla 39 del *Reglamento notarial* al no realizar las notas correspondientes al margen de la Escritura Núm. 3 respecto a las Actas de Subsanación que luego se autorizaron.

El Canon 9 de *Ética profesional* le impone al profesional del Derecho la obligación de guardar para con los tribunales una conducta de sumo respeto. Véase *In re: Manuel Díaz Collazo*, 2017 TSPR 22, 197 DPR ___ (2017). Como corolario, este Tribunal ha dispuesto que los notarios tienen el mismo deber respecto a las órdenes y requerimientos de la ODIN. Véase *In re: Lebrón Arroyo*, 194 DPR 932, 934-35 (2016). Por tanto, en ocasión en que la ODIN requiera información como parte de una investigación en el ámbito disciplinario, el profesional del Derecho tiene que acatar el requerimiento de forma oportuna. Ello, no sólo implica una presentación diligente de lo solicitado, sino también una producción completa y correcta de la información requerida. Véase *In re: José L. Amiama Laguardia*, 2016 TSPR 231, en la pág. 5, 196 DPR ___ (2016)

("[T]ratar con ligereza o laxitud los señalamientos de la ODIN también configura una violación del Canon 9").

No obstante, somos del criterio que la actuación de la licenciada Márquez Colón, si bien denota descuido, no demuestra una actitud de desidia, entorpecimiento de la investigación realizada por la ODIN como tampoco constituyen faltas que ameriten imponer una sanción rigurosa. Eso no significa que, en ocasiones futuras, la licenciada Márquez Colón no debe observar con mayor cuidado las disposiciones de la *Ley* y *Reglamento notarial* así como procurar el más estricto cumplimiento de los requerimientos de la ODIN o las órdenes de este Tribunal.

## IV

Al imponer una sanción disciplinaria, este Tribunal realiza un análisis de proporcionalidad con tal de propiciar la uniformidad de nuestros dictámenes. De un examen de la jurisprudencia más reciente en la que se examinó conducta violatoria del Canon 35 de *Ética profesional*, podemos constatar que las sanciones varían desde un mero apercibimiento hasta una suspensión indefinida. Véase *In re: Genaro Rodríguez Gerena*, 2016 TSPR 47, 194 DPR ___ (2016); *In re: Vargas Velázquez*, 193 DPR 681 (2015); *In re: María M. Charbonier Laureano*, 193 DPR 409 (2015) (Resolución); *In re: Peña Santiago*, 180 DPR 768 (2012); *In re: Edith E. Vázquez Padró*, 185 DPR 1031 (2012); *In re: Sigfrido Pons Fontana*, 182 DPR 300 (2011); *In re*

*Torres Alicea*, 175 DPR 456 (2009); *In re: Molina Fragosa*, 166 DPR 567 (2005); *In re: Vera Vélez*, 148 DPR 1 (1999).

De otra parte, previo a emitir nuestro dictamen, este Tribunal toma en consideración los siguientes criterios:

> (i) la buena reputación del abogado en la comunidad; (ii) su historial previo; (iii) si ésta constituye su primera falta y si alguna parte ha resultado perjudicada; (iv) la aceptación de la falta y su sincero arrepentimiento; (v) si se trata de una conducta aislada; (vi) el ánimo de lucro que medió en su actuación; (vii) resarcimiento al cliente, y (viii) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien de acuerdo con los hechos. *In re: Yvelisse Fingerhut Mandry*, 2016 TSPR 193, 196 DPR ___ (2016). Véase, además, *In re: Quiñones Ayala*, 165 D.P.R. 138, 147 (2005).

Respecto a lo anterior, surge del expediente personal de la licenciada Márquez Colón que ésta goza de buena reputación y no tiene historial previo de procesos disciplinarios en su contra. Además, ésta demostró un sincero arrepentimiento en todas las comparecencias que presentó ante este Tribunal. Por último, no surge del *Informe* de la ODIN o demás documentos que obran en el expediente del caso, que la licenciada Márquez Colón haya incurrido en las faltas aquí identificadas con ánimo de lucro o que las partes involucradas hayan sufrido un daño como causa de sus actuaciones.

**V**

En consideración a lo antes expuesto, determinamos que la Lcda. Maricarmen Márquez Colón violó el Canon 35 del *Código de ética profesional*. Tras evaluar la totalidad del

expediente personal de ésta, decretamos su suspensión inmediata del ejercicio de la notaría por un término de tres (3) meses. Así pues, se ordena a la Oficina del Alguacil de este Tribunal que incaute su obra notarial para que la ODIN realice el trámite de rigor correspondiente.

Por último, según comentamos, la licenciada Márquez Colón demostró tener cierta confusión respecto a cómo dar estricto cumplimiento a varias disposiciones de la *Ley* y *Reglamento notarial* por lo cual, le ordenamos a la licenciada Márquez Colón tomar un mínimo de tres (3) créditos de educación jurídica continua conducentes a la materia de Derecho Notarial. Ello, con posterioridad a la notificación de esta Opinión *Per Curiam* y Sentencia. Adviértase que el cumplimiento con ésta orden será tomado en consideración al momento de solicitar reinstalación al ejercicio de la notaría.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Maricarmen Márquez Colón          **Núm.** AB-2014-0464
     (TS-11,230)

SENTENCIA

San Juan, Puerto Rico, a 29 de junio de 2017

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, se ordena la suspensión inmediata del ejercicio de la notaría de la Lcda. Maricarmen Márquez Colón por un término de tres (3) meses. Así pues, se ordena a la Oficina del Alguacil que incaute su obra notarial para que la ODIN realice el trámite de rigor correspondiente.

Además, se le ordena a la licenciada Márquez Colón tomar un mínimo de tres (3) créditos de educación jurídica continua conducentes a la materia de Derecho Notarial. Ello, con posterioridad a la notificación de esta Opinión *Per Curiam* y Sentencia. Adviértase que el cumplimiento con ésta orden será tomado en consideración al momento de solicitar reinstalación al ejercicio de la notaría.

Notifíquese personalmente.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. Los Jueces Asociados señor Rivera García y señor Colón Pérez concurren con el resultado sin opinión escrita. El Juez Asociado señor Estrella Martínez no intervino.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo