EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Juan E. Medina Torres<br>(TS-5853) | 2018 TSPR 123<br><br>200 DPR ____ |

Número del Caso: AB-2007-0096

Fecha: 22 de junio de 2018

Abogado de la parte promovida:

        Lcdo. Pedro Malavet Vega

Oficina de Inspección de Notaría:

        Lcdo. Manuel Ávila De Jesús
        Director

Materia: La suspensión será efectiva el 5 de julio de 2018, fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Juan E. Medina Torres          AB-2007-0096
     (TS-5853)

*PER CURIAM*

En San Juan, Puerto Rico, a 22 de junio de 2018.


                    I

El 14 de abril de 1978 admitimos al Lcdo. Juan E. Medina Torres al ejercicio de la abogacía y el 26 de abril de 1978 prestó juramento como notario. Para una mejor comprensión de los hechos relevantes a la presente queja, conviene ofrecer un trasfondo de la gestión notarial que la ocasionó.

El Sr. Pelegrín Irizarry Rivera contrató al licenciado para liquidar la herencia de su esposa, la Sra. Amparo Godreau Guerrero (Amparo), quien falleció intestada el 27 de septiembre

de 1991.[1] El caudal hereditario de Amparo consistió únicamente en un bien inmueble (la Propiedad), el cual fue originalmente adquirido por sus padres y fue donde el padre y los tíos de la quejosa se criaron.

El 10 de enero de 1994 los integrantes de la Sucesión de Amparo, excepto Elías Pablo Godreau Guerrero (Elías) y Francisco Lorenzo Godreau Guerrero (Francisco),[2] acordaron partir y distribuir el caudal hereditario.[3] Ese mismo día, el licenciado Medina Torres autorizó una escritura sobre partición de herencia (escritura núm. 1 de 1994) y una escritura sobre compraventa de participaciones (escritura núm. 2 de 1994) en las que hizo constar que Elías compareció a ambas escrituras.[4] Mediante la escritura núm. 2

---

[1] El 13 de mayo de 1992 el Tribunal de Distrito, Sala de Ponce, emitió una Resolución sobre declaratoria de herederos en el caso civil núm. 92-1269 en la que se declaró que los herederos de Amparo eran:

> su esposo Pelegrín Irizarry Rivera y sus hermanos Miguel-Florencio, Oscar, Elías Pablo y Francisco de apellidos Godreau Guerrero, sus sobrinos Iris-Antonia y Carlos Daniel de apellidos Godreau Cardona, en representación de su hermano premuerto, Carlos-Daniel Godreau Guerrero, y su sobrina María-Josefina Godreau Tirado, en representación de su hermano premuerto, Enrique Godreau Guerrero, hijos respectivamente de estos.

El 8 de abril de 1993 se inscribió el derecho de los miembros de la Sucesión de Amparo sobre la propiedad, incluyendo la cuota viudal usufructuaria del señor Irizarry Rivera.

[2] Francisco Lorenzo Godreau Guerrero falleció intestado el 2 de abril de 1993, previo a la partición del caudal hereditario de Amparo. El 6 de agosto de 1993 se emitió una Resolución sobre declaratoria de herederos en que se declaró como sus únicos y universales herederos a sus hijos Carlos Daniel Godreau Cardona, Iris Antonia Godreau Cardona, Alicia Godreau Ten; y a su viuda, Tomasa Cardona.

[3] Estos fueron Miguel-Florencio Godreau Guerrero, Oscar Godreau Guerrero, Iris Antonia Godreau Cardona, Carlos Daniel Godreau Cardona, María Josefina Godreau Cardona y Pelegrín Irizarry Rivera. El Sr. Vicente Santiago González compareció a nombre de Oscar Godreau Guerrero a través de un poder especial, el cual fue protocolizado por el licenciado Medina Torres mediante la escritura núm. 29 el 9 de agosto de 1993.

[4] En torno a Francisco, quien ya había muerto, aunque no se hizo constar que compareció, en la parte de la escritura núm. 1 de 1994, intitulada "adjudicaciones", se hizo constar que "[a] FRANCISCO LORENZO GODREAU GUERRERO le corresponde una Séptima parte de la mitad del inmueble con

de 1994, el señor Irizarry Rivera adquirió las participaciones de los demás herederos en la Propiedad.

El 12 de abril de 1996 el notario Enzio Harry Ramírez Echevarría autorizó la escritura núm. 1 de 1996 sobre compraventa. Esta escritura fue producto de un acuerdo de transacción extrajudicial mediante el cual el señor Irizarry Rivera le vendió a Elías las participaciones que adquirió de la Propiedad mediante la escritura núm. 2 de 1994.

Elías falleció intestado el 1 de diciembre de 1998 y dejó como únicas y universales herederas a la Sra. Antonia Godreau Soto y a la Dra. Eileen Milagros Godreau Soto (quejosa). Estas otorgaron la escritura núm. 1 de 2002 sobre ratificación de compraventa, en la que ratificaron la compraventa entre su padre y el señor Irizarry Rivera correspondiente a la escritura núm. 1 de 1996.[5] Además, el 17 de diciembre de 2003 se inscribió el derecho hereditario de la quejosa y su hermana -como herederas de Elías- sobre la Propiedad.

Resulta necesario mencionar que el 28 de enero de 1999 la Lcda. Frances Díaz Medina, inspectora de la Oficina de Inspección de Notarías (ODIN), rindió un Informe de

---

un valor de unos DOS MIL OCHOSCIENTOS CINCUENTA Y SIETE DOLARES CON CATORCE CENTAVOS ($2,857.14)". *Informe de ODIN*, Anejo V, escritura núm. 1 de 1994, folio 4. A su vez, en la escritura núm. 2 de 1994 se hizo constar que "DON FRANCISCO LORENZO GODREAU GUERRERO recibió la cantidad de DOS MIL OCHOSCIENTOS CINCUENTA Y SIETE DOLARES CON CATORCE CENTAVOS ($2,857.14)". *Informe* de la Oficina de Inspección de Notarías (ODIN), Anejo VI, escritura núm. 2 de 1994, folio 10.

[5] Según se indicó en la escritura de ratificación de compraventa, en la escritura núm. 1 de 1996, "por error involuntario […] [Elías] omitió estampar sus iniciales" en uno de los folios. *Informe* de ODIN, Anejo VIII, escritura número 1 del 30 de mayo de 2002 de ratificación de compraventa, folio 3.

Inspección en el que señaló varias deficiencias que adolecían las escrituras núm. 1 y 2 de 1994. Entre estas: (1) la ausencia de la firma e iniciales de un compareciente (Elías); (2) no se identificó a Elías; (3) no compareció uno de los herederos (Francisco); (4) no se identificó ni se consignaron los antecedentes personales del apoderado, Sr. Vicente Santiago González, quien compareció en nombre de uno de los herederos (Oscar Godreau Guerrero); (5) faltaron sellos de rentas internas por $41.00 y el impuesto notarial, y (6) no se estampó el sello notarial en ninguno de los folios.[6]

El 21 de marzo de 2007 la quejosa presentó la queja que nos ocupa. Indicó que, cuando intentó vender la Propiedad, obtuvo una certificación registral mediante la cual conoció que todavía constaba inscrita a favor de los miembros de la Sucesión de Amparo. Añadió que la información le sorprendió porque entendía que Elías adquirió todas las participaciones en la Propiedad mediante la escritura núm. 1 de 1996. Explicó que años atrás le informaron que ODIN señaló deficiencias en las escrituras relacionadas a la Propiedad que autorizó el licenciado Medina Torres, pero que nada se hizo al respecto. Sin abundar sobre el particular, sostuvo que su experiencia con

---

[6] Según ODIN, estas deficiencias son solo una pequeña parte de las deficiencias encontradas en los protocolos correspondientes a los años 1989, 1992, 1994, 1995, 1996, 1997 y 1998. Véase *Informe* de ODIN, pág. 8.

el licenciado Medina Torres no fue la mejor, por lo que no le interesaba "recurrir a él en forma alguna".[7]

En su contestación, el licenciado Medina Torres indicó que Elías -el padre de la quejosa- compareció a una compraventa de participaciones, pero "después que todos estuvieron de acuerdo en venderle al Sr. Pelegrín Irizarry, […] [la quejosa] no quiso que su padre firmara y las escrituras fueron firmadas por todos los que comparecieron ante mí, menos el Sr. Elías Pablo Godreau Guerrero".[8] Añadió que "personalmente fu[e] a la casa [de Elías] para que [le] firmara las escrituras, [pero] su hija no quiso". Aun así, entendió que el señor Irizarry Rivera las presentaría en el Registro. Por último, sostuvo que "[n]o ve[ía] nada malo" y que entendía "que todo fue correcto de acuerdo a la Ley".[9]

El 3 de julio de 2008 ODIN presentó un *Informe*. Explicó en detalle los negocios jurídicos que se intentaron recoger en las escrituras núm. 1 y 2 del 10 de enero de 1994, así como sus defectos. En torno a la escritura núm. 1 de 1994, señaló que se hizo constar que comparecieron seis de los siete herederos de Amparo, siendo Francisco el único que no apareció como compareciente. Por tanto, destacó que solo se adjudicaron seis de las siete partes de la herencia y que una se adjudicó a Francisco, mientras que al viudo, el señor Irizarry Rivera, ninguna, a pesar de que sí compareció. Por otro lado, ODIN expuso que mediante la

---

[7] *Queja*, pág. 2.
[8] *Carta* del 9 de mayo de 2007, pág. 1.
[9] Íd., pág. 2.

escritura núm. 2 del 1994, el señor Irizarry Rivera compró las participaciones en la Propiedad que se adjudicaron en la referida escritura sobre partición de herencia.

En cuanto a las deficiencias que tienen ambas escrituras, ODIN aludió a las señaladas el 28 de enero de 1999 luego del proceso de inspección, las cuales no habían sido subsanadas para la fecha en que se preparó el Informe. Hizo especial énfasis en las dos que consideró más graves: (1) que ambas escrituras fueron autorizadas sin la firma e iniciales de uno de los comparecientes, y (2) que no se adhirieron ni cancelaron los sellos de rentas internas correspondientes al momento de autorizar las escrituras.

ODIN concluyó que ambas escrituras adolecen de faltas que "comprometen la validez de los negocios allí comprendidos".[10] Específicamente, sostuvo que la falta de la firma e iniciales de Elías representaba una deficiencia grave "que constituy[ó], de por sí, causa para decretar su nulidad",[11] lo cual comprometió la capacidad de los instrumentos para lograr acceso al Registro de la Propiedad. Señaló además que dicha falta, de por sí, implicaba negligencia crasa y exponía al licenciado Medina Torres a la jurisdicción disciplinaria de este Tribunal.[12]

Añadió que las demás deficiencias señaladas en las escrituras bajo estudio y en el resto de los protocolos pendientes de aprobación, en conjunto con la inacción del

---

[10] *Informe* de ODIN, pág. 8.
[11] Íd.
[12] Íd.

licenciado Medina Torres "en subsanar las mismas [demostraban] un patrón de negligencia, dejadez y descuido que [tuvo] un efecto agravante sobre la situación planteada en esta queja".[13] Además, catalogó como significativo que el licenciado Medina Torres no reconociera "la gravedad de las faltas cometidas en ambas escrituras y que, incluso, haya dejado transcurrir nueve años sin atender, al menos, los señalamientos notificados por la Inspectora de Protocolos".[14]

ODIN sostuvo que el licenciado Medina Torres tiene la obligación de subsanar los errores cometidos en su gestión notarial, lo cual incluye el deber de realizar a su costo las gestiones que se requieran para solucionar la situación registral de la Propiedad. Por ello, recomendó que este Tribunal le ordenara realizar las gestiones necesarias para concretar válidamente la distribución fallida de la escritura núm. 1 de 1994 y la venta comprendida en la escritura núm. 2, atender su ineficacia jurídica y corregir la situación registral de la Propiedad.

El 24 de julio de 2008 notificamos una Resolución en la que le concedimos al licenciado Medina Torres un término de 20 días para expresarse en cuanto al *Informe* de ODIN. Vencido el término, el licenciado Medina Torres presentó una *Moción en cumplimiento de orden*. Admitió que autorizó las referidas escrituras en las que Elías aparece como compareciente aun cuando Elías no las firmó. Indicó que, el

---

[13] Íd., pág. 9.
[14] Íd.

día en que los demás herederos firmaron las escrituras, Elías se negó a hacerlo porque opinaba que la propiedad era un bien privativo de Amparo sobre el cual el señor Irizarry Rivera no tenía derecho alguno.

Explicó que, aun cuando no se obtuvo el consentimiento de Elías para la partición de herencia, "[c]omo no podíamos darle para atrás a la escritura porque ya todos habían firmado y se habían ido, pues se certificó esa escritura para ver a qué llegaban estas dos personas y luego hacer otra escritura indicando lo que ocurrió con la firma del SR. GODREAU o se ratificaba".[15] Indicó además que, si se le hubiese notificado sobre la compraventa entre Elías y Pelegrín de 1996, él pudo haber "conformado" la escritura de compraventa de 1996 con las escrituras de partición de herencia y compraventa de 1994.[16] Aun así, opinó que, si se indica que Elías no compareció, las escrituras podrían ser inscritas.[17] Contrario a lo expuesto por ODIN, alegó haber corregido todas las faltas en su obra notarial hasta el año 2000. Por último, opinó que no ha "cometido ninguna falta como para que se me castigue de algo que no estuvo bajo mi control",[18] y lamentó que ODIN no sugirió cómo corregir las deficiencias de las escrituras.

El 19 de diciembre de 2008 le concedimos un término de 20 días al licenciado Medina Torres para corregir las deficiencias señaladas en la otorgación de las escrituras

---

[15] *Moción en cumplimiento de orden* del 25 de agosto de 2008, pág. 2.
[16] Íd., pág. 4.
[17] Íd.
[18] Íd., págs. 4-5.

número 1 y 2 de 1994 y a su vez a que nos mantuviera informados sobre las gestiones realizadas.

El 21 de octubre de 2009[19] el Lcdo. Pedro Malavet Vega compareció en representación del licenciado Medina Torres para informarnos sobre las gestiones realizadas y solicitar un término adicional. En primer lugar, expuso que Elías era el titular de todos los derechos sobre la Propiedad, con excepción de los de su hermano Francisco.[20] Fundamentó esa conclusión en el "tipo consensual" que distingue a nuestro ordenamiento jurídico en el cual la validez de los contratos no depende de la forma en que se hayan celebrado.[21]

En otras palabras, argumentó que los contratos de partición de herencia y compraventa que realizaron algunos integrantes de la Sucesión de Amparo con el señor Irizarry Rivera fueron válidos, pero que su validez solo se extiende

---

[19] El 8 de enero de 2009 el licenciado Medina Torres solicitó un término adicional debido a que ninguno de los notarios con los que consultó le pudieron explicar cómo corregir las deficiencias. El 28 de enero de 2009, mediante Resolución notificada el 2 de febrero de 2009, le concedimos un término adicional de 30 días para dar cumplimiento a la Resolución de 19 de diciembre de 2008. El 5 de marzo de 2009, fuera del término de 30 días concedido, el licenciado Medina Torres presentó una *Moción notificando situación*. Sostuvo que no pudo corregir las escrituras, pero que contrató al Lcdo. Pedro Malavet Vega quien le "informó que ya tenía la forma de cómo corregir este problema" y que este se estaría comunicando con el licenciado Medina Torres "en los próximos días". *Moción notificando situación*, págs. 1-2. El 18 de junio de 2009 le concedimos un término adicional de 20 días para dar cumplimiento a la Resolución de 19 de diciembre de 2008. El 29 de junio de 2009 el licenciado Medina Torres presentó una *Moción informativa* notificando situación. Sostuvo que el licenciado Malavet Vega preparó un plan de trabajo para corregir las deficiencias de las escrituras. El 18 de septiembre de 2009 le concedimos un término adicional de 30 días para dar cumplimiento a la Resolución de 19 de diciembre de 2008 y, *ante la gran cantidad de prórrogas concedidas*, se le apercibió "que sea diligente para dar cumplimiento a la Resolución antes mencionada".
[20] *Moción de representación y solicitud de término para resolver el problema planteado* del 21 de octubre de 2009, pág. 3.
[21] Íd., citando a Quiñones v. Quiñones Irizarry, 91 DPR 225, 299 (1964).

a las participaciones de los que firmaron las escrituras. Partiendo de esa premisa, enumeró los pasos a seguir para corregir las deficiencias. Primero, sostuvo que procedería preparar un Acta Notarial de Subsanación para aclarar que Elías no adquirió los derechos de Francisco. Segundo, estimó necesario tramitar una declaratoria de herederos de Francisco, lo cual anticipó que requeriría obtener el expediente del caso sobre la declaratoria de herederos de Amparo.[22] Y tercero, indicó que será necesario que los herederos de Francisco Lorenzo otorguen una escritura para ceder sus derechos a la quejosa y su hermana.

Examinada la comparecencia del licenciado Medina Torres, el 6 de noviembre de 2009 le concedimos un término *final* de 30 días para dar cumplimiento a la Resolución de 19 de diciembre de 2008. El 11 de diciembre de 2009 el letrado presentó una *Moción sobre cumplimiento con orden del tribunal y de término para culminar el proceso*. En esta, aclaró la versión ofrecida en escritos anteriores en cuanto a la comparecencia de Francisco en las escrituras bajo análisis. En particular, explicó que Francisco compareció a través de sus "hijos adoptivos", Carlos Daniel Godreau Cardona e Iris Antonia Godreau Cardona, "aunque no se expresó así en el documento".[23]

---

[22] Sin embargo, según se indicó anteriormente, ya existía una declaratoria de herederos de Francisco Lorenzo Godreau Guerrero emitida más de 16 años atrás en el caso civil núm. CD-93-417.

[23] *Moción sobre cumplimiento con orden del tribunal y de término para culminar el proceso* del 11 de diciembre de 2009, pág. 3. Sin embargo, en la escritura de partición de herencia se hizo constar que estos comparecieron en representación de su padre biológico, Carlos Daniel Godreau Guerrero.

Asimismo, y acorde con el plan de acción informado previamente, el licenciado incluyó con su moción copias de las escrituras sobre acta de subsanación y aclaración (escrituras núm. 16 y 17 de 10 de diciembre de 2009), cuyo propósito era subsanar las deficiencias de las escrituras Núm. 1 y 2 de 10 de enero de 1994. En la escritura núm. 16 de 2009, se hizo constar que Elías no compareció a la escritura núm. 1 de 1994 sobre partición de herencia.[24] Por ello, se aclaró que debe considerarse una partición parcial.[25] Además, se explicó que "Don Francisco Lorenzo Godreau Guerrero había fallecido el dos de abril de mil novecientos noventa y tres e Iris Antonia Godreau Cardona y Carlos Daniel Godreau Cardona comparecían como herederos, por derecho de representación de dicho Francisco Lorenzo Godreau Guerrero por ser hijos adoptivos de dicho causante".[26]

Por otro lado, en la escritura núm. 17 de 2009, se hicieron unas aclaraciones similares en torno a la escritura núm. 2 de 1994, sobre compraventa de participaciones. Específicamente, se hizo constar que Iris Antonia Godreau Cardona y Carlos Daniel Godreau Cardona recibieron el pago a cambio de la participación de

---

[24] Íd., Escritura número 16 de 10 de diciembre de 2009 sobre acta de subsanación, folio 4.

[25] Íd.

[26] Íd. No se aclaró si esto quiere decir que Iris Antonia Godreau Cardona y Carlos Daniel Godreau Cardona heredaron dos veces: a nombre de Francisco Lorenzo Godreau Guerrero (tío y padre adoptivo) y a nombre de Carlos Daniel Godreau Guerrero (padre biológico y en representación de quien comparecieron a la escritura de partición de herencia), o, en la alternativa, quién compareció en representación de Carlos Daniel Godreau Guerrero.

Francisco en la propiedad. Además, se aclaró que la compraventa no comprendía las participaciones de Elías debido a que este "se retiró voluntariamente del acto y no firmó".[27]

El 10 de febrero de 2010 el licenciado Medina Torres presentó una *Moción informativa sobre cumplimiento con órdenes del Tribunal.* Informó que presentó en el Registro de la Propiedad los documentos necesarios para corregir el error cometido, incluyendo las escrituras originales, las actas aclaratorias y la instancia correspondiente.[28]

Por su parte, el 23 de marzo de 2010 ODIN presentó una *Moción en torno a cumplimiento con orden del tribunal y de término para culminar el proceso.* Sostuvo que las actas de subsanación no son suficientes para corregir las deficiencias que adolecen las escrituras núm. 1 y 2 de 1994.[29] Explicó que

> [i]ndependientemente de la validez en el ámbito civil que puedan tener los actos u obligaciones en que hayan incurrido las partes o la determinación que en su día pueda tomar el Registrador de la Propiedad sobre este asunto, en el ámbito notarial un acta de subsanación no es medio aceptable para corregir los errores señalados en las escrituras antes referidas.[30]

De acuerdo con lo anterior, reiteró su postura de que la única forma de subsanar las deficiencias señaladas -fuera de instar un pleito civil a esos efectos- era

---

[27] Íd., Escritura número 17 de 10 de diciembre de 2009 sobre acta de subsanación, folio 3.

[28] Incluyó un recibo de presentación del 3 de febrero de 2010.

[29] *Moción en torno a cumplimiento con orden del tribunal y de término para culminar el proceso* que presentó la ODIN el 23 de marzo de 2010, pág. 1.

[30] Íd., págs. 1-2.

autorizar una nueva escritura en la que comparezcan las partes esenciales originales, sus herederos o apoderados debidamente acreditados.[31] Finalizó indicando que no objetaba que se concediera un término adicional para corregir la nulidad de las escrituras y culminar el proceso de inscripción.[32]

El 28 de junio de 2010 el licenciado Medina Torres presentó una *Moción informativa sobre seguimiento para cumplir con órdenes del Tribunal*. Informó que el Registro notificó como falta que no se incluyeron como documentos complementarios: (1) la declaratoria de herederos de Francisco Lorenzo Godreau Guerrero, y (2) copia certificada de la escritura Núm. 2 de 1996. Añadió que a través de las gestiones para obtener la declaratoria de Francisco descubrió que este tuvo una hija de nombre Alicia Godreau Ten y que, por lo tanto, tuvo tres herederos en total y no dos, según indicó antes. Por tanto, arguyó que sería necesario que Alicia Godreau Ten ratificara la cesión que sus hermanos hicieron a favor del señor Irizarry Rivera en la escritura núm. 2 de 1994.

El 11 de enero de 2013, el licenciado Medina Torres autorizó la escritura número 2 de 2013, sobre cesión de derechos y acciones a la que compareció la Sra. Alicia

---

[31] Íd., pág. 2.
[32] Íd. El 14 de mayo de 2010 ordenamos al licenciado Medina Torres a mantener informada a ODIN sobre las gestiones ante el Registro y a corregir las deficiencias en las escrituras número 1 y 2 de 1994, según indicó ODIN en el Informe de 3 de julio de 2008.

Godreau Ten. Se hizo constar que en la escritura núm. 1 de 1994:

> comparecieron Carlos Daniel Godreau Cardona e Iris Antonia Godreau Cardona y cedieron a favor de Pelegrín Irizarry todos los derechos que tenían sobre la propiedad inmueble anteriormente descrita. Recibieron en pago la suma de Mil Cuatrocientos Veintiocho Dólares con Cincuenta y Siete Centavos ($1,428.57) cada uno, para un total de Dos Mil Ochocientos Cincuenta y Siete Dólares con Catorce Centavos ($2,857.14). De dicha suma correspondía a la compareciente una tercera parte como coheredera de su padre Francisco Godreau Guerrero, o sea la suma de Novecientos Cincuenta y Dos Dolares con Treinta y Ocho Centavos ($952.38), que entonces no le fue entregada.[33]

Mediante dicha escritura y luego de que el licenciado Medina Torres le pagara la cantidad de $952.38, la señora Godreau Ten ratificó las cesiones de sus hermanos al señor Irizarry Rivera y cedió los derechos y acciones que pudiera tener sobre la Propiedad como heredera de su padre Francisco Godreau Guerrero.[34]

---

[33] *Moción informativa sobre gestiones del querellado*, escritura número 2 del 11 de enero de 2013 sobre ratificación de cesión de derechos y acciones, folios 2-3. Conviene recordar que en las escrituras núm. 1 y 2 de 1994 se hizo constar que Carlos Daniel Godreau Cardona e Iris Antonia Godreau Cardona comparecieron en representación de Carlos Daniel Godreau Guerrero y que no se hizo constar que Francisco Godreau Guerrero o sus herederos comparecieron. En las actas de subsanación que preparó el licenciado Medina Torres el 10 de diciembre de 2009 no se aclaró qué ocurrió con la participación de Carlos Daniel Godreau Guerrero si los que comparecieron en su nombre en realidad comparecieron en representación de Francisco.

[34] Íd., folios 3 y 4. Específicamente, la señora Godreau Ten ratificó:

> la Cesión de Derechos sobre el inmueble antes descrito a favor de Don Pelegrín Irizarry Rivera realizada mediante la escritura número dos del diez de enero de mil novecientos noventa y cuatro … y acept[ó] igualmente la consecuencia normal y jurídica de la cesión mediante compraventa que realizara dicho Pelegrín Irizarry Rivera a favor de Elías Pablo Godreau Guerrero y su esposa Caridad Soto Olivera mediante la escritura número uno (1) otorgada ante el notario Enzio Harry Ramírez Echevarría el doce de abril de mil novecientos noventa y seis. Íd., folio 3.

Por su parte, el 4 de abril de 2014 la quejosa cursó una misiva a la Secretaría de este Tribunal en la que increpó las razones por las cuales desde el 10 de octubre de 2010 no había movimiento en este procedimiento. Argumentó que este Tribunal concedió tiempo más que suficiente, tanto al licenciado Medina Torres como al licenciado Malavet Vega, para solucionar los problemas registrales que sufre la Propiedad. Informó que, mientras tanto, la propiedad era víctima constante de vandalismo y que continuaba sufragando los costos asociados con las contribuciones territoriales y el mantenimiento de la propiedad, aun cuando desde el 2007 intentaba venderla.

El 27 de mayo de 2014 le concedimos un término de 10 días al licenciado Medina Torres para informarnos sobre las gestiones realizadas para dar cumplimiento a las órdenes de este Tribunal a fin de corregir de forma definitiva la situación que motivó esta queja.

Luego de vencido el término,[35] el licenciado Medina Torres presentó una *Moción informativa sobre gestiones del querellado*. Sostuvo que lo único que faltaba para poder presentar las escrituras en el Registro era obtener el relevo del Departamento de Hacienda relacionado a la planilla del caudal relicto de Francisco.[36] Por último, justificó la lentitud con el cumplimiento de la Resolución del 19 de diciembre de 2008 debido a que su representante

---

[35] La Resolución del 27 de mayo de 2014 se notificó el 3 de junio de 2014. El licenciado Medina Torres compareció el 18 de junio de 2014.
[36] *Moción informativa sobre gestiones del querellado* del 18 de junio de 2014, págs. 5-6.

legal atravesó "una muy delicada situación de salud por los últimos ocho (8) meses".[37]

El 22 de abril de 2016 le concedimos un término de 10 días al licenciado Medina Torres para que nos informara sobre el estatus del proceso de obtención del Relevo de la Planilla Enmendada de Caudal Relicto y la presentación de los documentos correspondientes ante el Registro de la Propiedad. Por otro lado, le recordamos que esta queja fue presentada en el 2007 y que, conforme a la *Resolución* del 19 de diciembre de 2008, debía realizar las gestiones necesarias hasta corregir satisfactoriamente todas las deficiencias señaladas.

Vencido el término concedido,[38] el licenciado Medina Torres presentó una *Moción informativa sobre cumplimiento del querellado*, en la que informó que finalmente presentó las escrituras en el Registro de la Propiedad de Ponce,

---

[37] Íd., pág. 6. El 27 de marzo de 2015 ordenamos al licenciado Medina Torres a concluir en no más tarde de 10 días las gestiones necesarias para cumplir con la Resolución del 27 de mayo de 2014 o en su defecto, informar del progreso de estas por escrito a ODIN. La Resolución del 27 de marzo de 2015 fue notificada el 14 de abril de 2015. El licenciado Medina Torres compareció el 29 de abril de 2015, cinco días después de vencido el término concedido, mediante una misiva al Director de ODIN. En torno a las gestiones realizadas, informó que se encontraba en la misma posición que en la comparecencia anterior. El 8 de mayo de 2015 el licenciado Medina Torres presentó una *Moción informativa sobre adelanto de las gestiones del querellado* en la que informó que logró establecer comunicación con uno de los hijos de Francisco, Carlos Daniel Godreau Cardona, quien le ayudaría a obtener el documento del caudal relicto de Francisco que faltaba. El 21 de julio de 2015 ordenamos al licenciado Medina Torres a concluir satisfactoriamente sus gestiones o, en su defecto, informar del progreso de éstas, por escrito a ODIN. El 31 de marzo de 2016 ODIN presentó una *Moción informativa*, en la que informó que remitió una comunicación al licenciado Medina Torres en la que le concedió hasta el 18 de marzo de 2016 para informar sobre la etapa procesal en la cual se encontraba el proceso de inscripción. El licenciado Medina Torres contestó 10 días luego de expirado el término concedido por ODIN, pero no expuso mayores adelantos.
[38] La Resolución se notificó el 25 de abril de 2016 y el licenciado Medina Torres compareció el 13 de mayo de 2016.

acompañadas con las dos escrituras de actas de subsanación del 10 de diciembre de 2009.

Como consecuencia, el 24 de junio de 2016 dimos por cumplida la Resolución del 22 de abril de 2016 y ordenamos el archivo de este asunto, no sin antes apercibir al licenciado Medina Torres de que en el futuro debería ser más diligente en sus gestiones notariales.

Así las cosas, el 1 de febrero de 2017 el Registro de la Propiedad notificó al licenciado Medina Torres que las escrituras número 1 y 2 de 1994 y número 1 de 1996 adolecían de las siguientes faltas que impedían su inscripción: (1) no se presentó la Declaratoria de Herederos o Testamento de Francisco Lorenzo Godreau Guerrero y (2) no comparecieron Eileen Milagros Godreau Soto y Antonia María Godreau Soto. El 21 de febrero de 2017 las faltas se dieron por consentidas y el 21 de abril de 2017 caducaron los asientos correspondientes.

El 25 de julio de 2017 la quejosa envió una carta a ODIN. Informó que el Registro notificó faltas que impedían la inscripción de las escrituras y que los asientos correspondientes caducaron. Señaló que mantuvo comunicación con el licenciado Malavet Vega, el cual le indicó que iba a trabajar con el asunto, pero no lo hizo.

El 16 de octubre de 2017 ODIN presentó una *Moción informativa y en solicitud de orden* en la que informó sobre la carta de la quejosa del 25 de julio de 2017 y recomendó ordenar al licenciado Medina Torres a informar en 30 días

los problemas que en esta "etapa histórica" impiden la calificación de los documentos presentados ante el Registro de la Propiedad, así como la elaboración de un plan de acción para cumplir con lo ordenado.[39]

Este compareció oportunamente por derecho propio e indicó que tan pronto recibió la notificación del Registro la llevó al licenciado Malavet Vega "para su atención", pero que este nada hizo.[40] Sobre las faltas notificadas, argumentó que estaban fuera de su control ya que la Registradora exigió una firma de un documento de la quejosa que él "desconocía".[41]

El 26 de enero de 2018 ordenamos a ODIN a expresarse en torno a la moción del licenciado Medina Torres. En respuesta, ODIN presentó una *Moción en cumplimiento de orden* en la que confirmó que las escrituras fueron notificadas y que los asientos correspondientes en el Registro caducaron luego de que las faltas fueran consentidas sin haberse presentado un escrito de recalificación. Por tanto, opinó que el licenciado Medina Torres se encontraba en incumplimiento con la Resolución del 14 de mayo de 2010. ODIN recomendó conferir un término final e improrrogable so pena de encaminar un proceso de desacato ante el Tribunal de Primera Instancia.[42]

---

[39] *Moción informativa y en solicitud de orden* del 16 de octubre de 2017, pág. 2. El 28 de noviembre de 2017 el licenciado Medina Torres presentó una *Moción de prórroga* en la que solicitó un término adicional de 40 días para comparecer debido a que no tenía electricidad desde el paso del huracán María.

[40] *Moción en respuesta a Resolución y orden*, pág. 1.

[41] Íd.

[42] *Moción en cumplimiento de orden* del 15 de febrero de 2018, pág. 3.

En vista de lo expuesto por ODIN, el 16 de marzo de 2018 le concedimos un término final de 20 días al licenciado Medina Torres para comparecer y mostrar causa por la cual no se le debía suspender del ejercicio de la profesión de la abogacía por no cumplir con los requerimientos de ODIN.

El licenciado Medina Torres compareció oportunamente por derecho propio y presentó una *Moción explicativa y solicitud.* Explicó que "para nuestra sorpresa, se nos notificó que las hermanas Eileen Milagros y Antonia María de apellidos Godreau Soto tenían que comparecer para firmar la escritura, a la que le notificamos a los empleados que ellas no están comprando nada".[43] Finalizó exponiendo que "quisiera que [le] explicaran claro lo que tenemos que hacer para inscribir las escrituras, pero nadie me indica cómo y ahora, traen un nuevo problema",[44] al tiempo en que solicitó un término adicional.

El 12 de abril de 2018 la quejosa cursó una misiva a Secretaría en respuesta a la referida comparecencia del licenciado Medina Torres. Refutó ciertas alegaciones del licenciado, incluyendo el que Elías hubiese estado en el lugar donde los demás comparecientes firmaron las escrituras, ya que "de haber comparecido hubiera leído ambas escrituras e indica[do] que el nombre de su hermano Francisco Godreau debía eliminarlo porque […] había

---

[43] *Moción explicativa y solicitud* del 11 de abril de 2018, pág. 2.
[44] Íd., pág. 3.

fallecido".[45] Sostuvo que los defectos que notificó el Registro se sabían desde que se presentó la queja por lo que no había razón para que el licenciado Medina Torres omitiera tomar "las providencias necesarias" para lograr que las escrituras incluyeran la comparecencia de la quejosa y su hermana, según era evidente que sería necesario.[46]

II

El Canon 9 del Código de Ética Profesional, 4 LPRA Ap. IX, exige el mayor respeto de los abogados hacia los tribunales, lo cual implica que constituye una violación ética el desatender nuestras órdenes y mostrarse indiferente ante nuestros apercibimientos. In re Baretty Torres, 195 DPR 600, 604 (2016); In re Pastrana Silva, 195 DPR 366, 369 (2016). Consistentemente hemos reiterado que este tipo de conducta es suficiente para imponer como sanción la suspensión inmediata e indefinida de la abogacía y la notaría. In re Mangual Acevedo, 197 DPR 998, 1001 (2017); In re Baretty Torres, supra; In re Pastrana Silva, supra. También procede dicha sanción cuando se incumple con los requerimientos de una entidad a la cual le hemos delegado alguna función relacionada con las tareas de regular el ejercicio de la profesión, como lo es ODIN. In re Baretty Torres, supra, págs. 604-605. Cónsono con lo anterior, hemos sido enfáticos en que desatender los requerimientos de ODIN constituye un serio desafío a la

---

[45] Carta del 12 de abril de 2018, pág. 1.
[46] Íd., pág. 2.

autoridad de los tribunales. In re López Castro, 197 DPR 819, 826 (2017).

Por otro lado, el Canon 12 del Código de Ética Profesional, supra, requiere que, en la tramitación de las causas que le son encomendadas, "los abogados presten atención minuciosa, sean diligentes y cumplan con las órdenes del tribunal". In re Torres Román, 195 DPR 882, 891 (2016). Sobre esto, hemos expresado que "[e]l compromiso de mantener y contribuir a un orden jurídico íntegro y eficaz, para lograr la más completa confianza y apoyo de la ciudadanía, se extiende no sólo a la esfera de la litigación de causas sino a la jurisdicción disciplinaria de este foro". In re Ríos Acosta I, 143 DPR 128, 135 (1997) citando a In re Pérez Rodríguez, 115 DPR 810, 811 (1984). Véase In re Miranda Gutiérrez, 188 DPR 745, 748 (2013); In re García Ortiz, 187 DPR 507, 517 (2012). Es decir, estos tienen la obligación de responder con premura y diligencia los requerimientos cursados con relación a una queja por conducta profesional o se exponen a sanciones disciplinarias serias. In re García Ortiz, supra.

Asimismo, el abogado además tiene un deber de rendir una labor competente y de desplegar "en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable". Canon 18 del Código de Ética Profesional, supra. Este canon requiere "que los abogados y abogadas, así como los notarios y las notarias, sean especialmente

diligentes en el cumplimiento de sus obligaciones, voluntariamente asumidas, como custodios de la fe pública notarial". In re Pagani Padró, 198 DPR 812, 822 (2017). Por lo tanto, un notario que incumple con las disposiciones de la Ley Notarial de Puerto Rico (Ley Notarial), 4 LPRA sec. 2001 et seq., o el Reglamento Notarial, 4 LPRA Ap. XXIV, contraviene lo dispuesto en este canon. In re Arocho Cruz, 198 DPR 360, 365-366 (2017); In re Maldonado Maldonado, 197 DPR 802, 812-814 citando a In re Aponte Berdecía, 161 DPR 94, 106 (2004). ("[U]na vez un notario contraviene la ley vigente, incurre en una práctica notarial indeseable y contraviene el canon mencionado".)

Por otro lado, el Canon 35 exige que los miembros de la profesión legal se conduzcan de forma sincera y honrada y, en particular, que se "ajust[en] a la sinceridad de los hechos al examinar testigos, al redactar afidávits u otros documentos [...]". Canon 35 del Código de Ética Profesional, supra. Además, según el Canon 38 del Código de Ética Profesional, supra, estos deben "esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión [...]". Un abogado viola este canon cuando la conducta que realiza afecta sus condiciones morales y hace que sea indigno de pertenecer a este foro. In re Rodríguez López, 196 DPR 199, 208 (2016).

En lo pertinente, los profesionales del Derecho que ejerzan la notaría están obligados a cumplir, además de con los Cánones del Código de Ética Profesional, con las

disposiciones de la Ley Notarial y su Reglamento. In re Pagán Díaz, 198 DPR 398 (2017); In re Arocho Cruz, supra, pág. 367.

Según el artículo 2 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2002, el notario "ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales". Asimismo, "[l]a fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento". Íd. Por la importancia que reviste la función notarial en nuestro ordenamiento, esta se debe realizar con sumo esmero y celo profesional. In re Márquez Colón, 198 DPR 509, 517-518 (2017).

La fe pública notarial es la espina dorsal de todo el esquema de autenticidad documental notarial el cual, a su vez, hemos reconocido es esencial para el tráfico jurídico. In re Collazo Sánchez, 159 DPR 769 (2003); In re Márquez Colón, supra, págs. 517-518. El documento autorizado por un notario, bajo su firma, signo, sello y rúbrica, contiene una presunción conferida por el Estado de que lo afirmado es cierto, correcto y concuerda con la realidad. In re Collazo Sánchez, supra, pág. 774.

A tales efectos, cuando un notario autoriza un documento, da fe pública y asegura que cumple con todas las

formalidades de ley, formal y sustantivamente. Íd. Además, que el documento es legal y verdadero, y que se trata de una transacción válida y legítima. Íd. Al faltar a la verdad de los hechos, el notario incumple con su función de custodiar la fe pública e incurre en una conducta que queda al margen de la ética del notario público. Íd.; In re Márquez Colón, supra, págs. 517-518. Es por ello que en reiteradas ocasiones hemos advertido que hacer constar hechos falsos en una escritura pública es una de las faltas éticas más graves que un notario puede cometer, aun ante la ausencia de intención de faltar a la verdad y se deba a la ausencia de la debida diligencia en la gestión notarial. In re Collazo Sánchez, supra, págs. 774-775; In re Márquez Colón, supra, pág. 519; In re Vargas Velázquez, supra, pág. 690; In re Llanis Menéndez, supra, pág. 26.

### III

El caso ante nuestra consideración es un triste ejemplo de las consecuencias nefastas que puede tener en terceros la labor incompetente de un notario, y de lo agravante que resulta que este no reconozca oportunamente sus faltas y que no subsane efectiva y diligentemente el producto de esa labor deficiente.

El trayecto prolongado de más de 11 años, de este procedimiento disciplinario -unido a los más de 24 años que han transcurrido desde que el licenciado Medina Torres autorizó las escrituras- exigen que este Tribunal actúe y no permita dilaciones adicionales en la consecución de la

solución al problema registral de la propiedad de la quejosa.

Al examinar el expediente ante nuestra consideración, con especial énfasis en las admisiones en las comparecencias del licenciado Medina Torres, estamos convencidos de que el primer paso en esa dirección es separar inmediata e indefinidamente al licenciado Medina Torres del ejercicio de la notaría. Esto, sin necesidad de trámite ulterior en vista de que el licenciado Medina Torres admitió los hechos que constituyen violaciones a los Cánones 9, 12, 18, 35 y 38 del Código de Ética Profesional, supra.

A. Cánones 18, 35 y 38

A lo largo de los once años de este procedimiento disciplinario, el licenciado Medina Torres ha argumentado que no hizo nada incorrecto al autorizar las escrituras núm. 1 y 2 de 1994. Aún así, no ha negado que las autorizó plenamente consciente de que uno de los comparecientes no las firmó porque no estaba de acuerdo con los negocios jurídicos en ellas plasmados.

Como bien concluyó ODIN en su Informe, la omisión de la firma de Elías en las escrituras núm. 1 y 2 de 1994 acarreó la nulidad de ambos instrumentos públicos. Además, según admitió el licenciado Medina Torres, en ambas escrituras se hicieron constar otros hechos falsos relacionados a la comparecencia de Francisco Godreau Guerrero. Este proceder no solo laceró la fe pública

notarial, los artículos 2 y 16 de la Ley Notarial, _supra_, y la Regla 34 del Reglamento Notarial, _supra_, sino también los deberes de competencia, sinceridad y de exaltar el honor y la dignidad de la profesión custodiados por los Cánones 18, 35 y 38 del Código de Ética Profesional, _supra_. Véanse _In re Flores Martínez_, 2018 TSPR 27, 199 DPR ___ (2018); _In re Pagani Padró_, _supra_; _In re Montalvo Guzmán_, 164 DPR 806 (2005); _In re Fournier_, 114 DPR 255 (1983).

Ahora bien, el incumplimiento del licenciado Medina Torres con su deber de competencia no se limitó a su autorización de las escrituras, sino que se extendió a las gestiones dirigidas a lograr la subsanación de las deficiencias. Específicamente, el licenciado Medina Torres violó la Ley Notarial y su Reglamento, al igual que faltó a su deber de competencia, al intentar corregir la ausencia de la firma de uno de los comparecientes mediante acta de subsanación.[47] Esto, aun luego de que ODIN señalara que las

---

[47] El artículo 29 de la Ley Notarial, 4 LPRA sec. 2047, dispone:

Los defectos de que adolezcan los documentos notariales ínter vivos podrán ser subsanados, sin perjuicio de terceros, por las partes que hubiesen comparecido en el documento o por sus herederos o causahabientes por medio de una escritura pública en que se haga constar el defecto, su causa y la declaración que lo subsana.

Si se dejase de hacer constar por el notario algún dato o circunstancia dispuesto por este capítulo, o si se tratase de error en el relato de hechos presenciados por el notario que corresponda a éste consignar, podrán estas faltas ser subsanadas por el notario autorizante a sus expensas, por propia iniciativa o a instancia de cualesquiera de las partes, por medio de acta notarial en que se haga constar el defecto o error, su causa y la declaración que lo subsana.

Si fuera imposible hacer la subsanación en las formas indicadas anteriormente, podrá obtener ésta por cualquier medio de prueba admitido en derecho mediante el procedimiento judicial correspondiente ante el Tribunal de Primera Instancia.

actas de subsanación eran insuficientes para corregir la nulidad de las escrituras. En cambio, ODIN indicó que era necesario autorizar una escritura de rectificación *con todos los comparecientes originales o sus herederos.*

Sin embargo, el licenciado Medina Torres ignoró lo expuesto por ODIN en el *Informe* y en la moción presentada el 23 de marzo de 2010,[48] lo cual ha resultado en que más de una década después de que se presentó la queja -y casi 10 años después de que se le notificaron las faltas en las escrituras- no ha podido solucionar este asunto y cumplir con su deber como notario y custodio de la fe pública.

Se le añade que el 16 de marzo de 2018 ordenamos al licenciado Medina Torres a mostrar causa por la cual no se le debía suspender del ejercicio de la abogacía por no cumplir con los requerimientos de ODIN. A pesar de que compareció oportunamente, consideramos que no mostró causa. Expresó estar en desacuerdo con la determinación del

---

El comentario de la Regla 39 del Reglamento Notarial, supra, específicamente aclara que errores relacionados al consentimiento del negocio jurídico no pueden ser subsanados mediante acta de subsanación. Sobre el particular, en In re Torres Olmeda, 145 DPR 385 (1998) indicamos:

> Un notario puede corregir, mediante un acta de subsanación, errores u omisiones de una escritura que no afecten el negocio jurídico llevado a cabo en ésta. *Si dichos errores afectan el negocio jurídico, el notario tendrá que otorgar una escritura de rectificación con la comparecencia de las partes.* Íd., pág. 391 (énfasis suplido).

Véanse In re Godínez Morales, 161 DPR 219, 250-251 (2004); In re Igartúa Muñoz, 153 DPR 315, 318-320 (2001). Véase además P. Malavet Vega, El Derecho Notarial en Puerto Rico, Ponce, Ediciones Omar, 2010, págs. 201-205.

[48] El licenciado Medina Torres también ignoró nuestra Resolución del 14 de mayo de 2010 en la que le ordenamos a corregir -según indicó ODIN- las deficiencias en las Escrituras Núm. 1 y 2 de 1994.

Registro- aunque no presentó un escrito de recalificación-de que las integrantes de la Sucesión de Elías debían comparecer a cualquier escritura en la que se traspase el dominio de la propiedad en cuestión, ya que ellas no están comprando nada.[49]

Lejos de ofrecer una justificación por su incumplimiento con los requerimientos de ODIN y por dejar caducar los asientos de las escrituras por segunda vez sin tomar acción alguna, o de exponer cómo logrará la inscripción de las escrituras, el licenciado Medina Torres sostuvo que "quisiera que me explicaran claro lo que tenemos que hacer para inscribir las escrituras, pero nadie me indica cómo y ahora, traen un nuevo problema".[50] Contrario a lo indicado por el licenciado, ODIN especificó en dos ocasiones distintas que lo que procedía era la autorización de escrituras de rectificación con todos los comparecientes originales o sus herederos.[51]

La negativa del licenciado Medina Torres de atender correcta y efectivamente los defectos de las escrituras y de ignorar la forma de solucionar el problema propuesta por ODIN, la cual se fundamentó en las disposiciones pertinentes de la Ley Notarial, supra, y su Reglamento, constituyen violaciones adicionales al Canon 18.

B. Cánones 9 y 12

---

[49] *Moción explicativa y solicitud* presentada el 11 de abril de 2018, pág. 2.
[50] Íd., pág. 3.
[51] Véase Art. 29 de la Ley Notarial, supra, el cual establece cómo subsanar defectos en instrumentos públicos.

El 24 de junio de 2016 archivamos este asunto luego de que el licenciado Medina Torres acreditara que presentó en el Registro las escrituras en controversia, no sin antes apercibirle a ser más diligente en sus gestiones notariales. Sin embargo, el licenciado Medina Torres hizo caso omiso a nuestro apercibimiento cuando el Registro de la Propiedad le notificó -por segunda ocasión- que las escrituras adolecían de faltas que impedían su inscripción y este permitió que los asientos correspondientes caducaran sin tomar acción alguna. Al así proceder, el licenciado Medina Torres incumplió con nuestras Resoluciones del 19 de diciembre de 2008, 14 de mayo de 2010, 27 de mayo de 2014 y 24 de junio de 2016.

Tampoco debemos perder de vista que las deficiencias en las escrituras bajo estudio fueron señalas por ODIN el 28 de enero de 1999, y que en aquella ocasión el licenciado Medina Torres no atendió los requerimientos de esa oficina. Además, del expediente se desprenden, por lo menos, cinco ocasiones distintas en las que el licenciado compareció ante este Tribunal o ante ODIN tardíamente.[52] Por lo tanto, es evidente que el licenciado Medina Torres violó el Canon 9 del Código de Ética Profesional, supra. Véase In re Vélez Lugo, 195 DPR 550, 555-556 (2016).

El letrado además contravino los deberes plasmados en el Canon 12 del Código de Ética Profesional, supra, al

---

[52] Véanse Resoluciones del 17 de julio de 2008, 28 de enero de 2009, 27 de mayo de 2014, 27 de marzo de 2015, así como la *Moción informativa* de ODIN del 31 de marzo de 2016 y las correspondientes comparecencias del licenciado Medina Torres.

obstaculizar la labor de ODIN y no subsanar las faltas señaladas en su obra protocolar oportunamente, incluyendo las que dieron origen a la presente queja. Además, según evidencia el largo trayecto procesal de este caso, el licenciado Medina Torres no ha atendido con diligencia las órdenes emitidas por este Tribunal en cuanto a lograr la inscripción de las escrituras. Véase In re Torres Román, supra, pág. 893 ("Téngase en cuenta, además, que este Tribunal ha dispuesto que los padecimientos de salud de un abogado no lo excusan de cumplir con los deberes éticos que informan el ejercicio de la abogacía en nuestra jurisdicción".)

C. Sanción

Ante estas violaciones por parte del licenciado, nos corresponde determinar qué sanción se le debe imponer, en consideración a:

> (1) la buena reputación del abogado en la comunidad; (2) su historial previo; (3) si esta constituye su primera falta y si ninguna parte ha resultado perjudicada; (4) la aceptación de la falta y su sincero arrepentimiento; 5) si se trata de una conducta aislada; (6) el ánimo de lucro que medió en su actuación; (7) el resarcimiento al cliente; y (8) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien según los hechos. In re Pagani Padró, supra, págs. 826-827.

Según indicó ODIN en su Informe, en ocasiones anteriores hemos sancionado al licenciado Medina Torres por varias remisiones tardías al Registro de Poderes.[53] De otro

---

[53] En la Resolución de 10 de marzo de 1983 le impusimos una multa de $50.00 y en la Resolución de 3 de abril de 1985 le impusimos otra de $100.

lado, es particularmente notable que el licenciado Medina Torres no ha reconocido que actuó incorrectamente o de forma antiética. Coincidimos con ODIN en que esto representa un agravante a la negligencia exhibida por el licenciado Medina Torres en su gestión notarial, y nuevamente hacemos un llamado a los abogados y abogadas a que acepten y reconozcan voluntariamente los actos contrarios a la ética que han cometido, lo cual limitaría la cantidad de asuntos disciplinarios innecesariamente adversativos y redundaría en beneficio para todas las partes envueltas. Véase In re López Santiago, 2018 TSPR 31, 199 DPR ___ (2018).

La gravedad de las faltas cometidas por el licenciado Medina Torres y el daño que las deficiencias en la labor notarial le continúan ocasionado a la quejosa y a terceros exigen que se suspenda inmediatamente al licenciado Medina Torres del ejercicio de la abogacía por un término de 3 meses y del ejercicio de la notaría inmediata e indefinidamente. Véanse In re Flores Martínez, supra, pág. 7; In re Márquez Colón, supra, págs. 531-532; In re Arocho Cruz, supra, págs. 368-369; In re Vargas Velázquez, supra; In re Surillo Ascar, 160 DPR 742 (2003). En consecuencia, la fianza notarial queda automáticamente cancelada.[54]

Se le impone el deber de notificar a todos sus clientes

---

[54] La fianza se considerará buena y válida por tres años después de su terminación debido a los actos realizados por el licenciado Medina Torres durante el periodo en que la misma estuvo vigente.

sobre su inhabilidad para continuar representándolos y devolverles cualesquiera honorarios recibidos por trabajos no realizados. Deberá además informar inmediatamente de su suspensión a los foros judiciales y administrativos en que tenga asuntos pendientes. El licenciado deberá acreditar a este Tribunal el cumplimiento con lo anterior dentro del término de 30 días a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiere conllevar que no se le reinstale al ejercicio de la abogacía cuando lo solicite.

Por último, se le ordena al señor Medina Torres a corregir a sus expensas los defectos en las escrituras núm. 1 y 2 de 1994 de forma definitiva dentro del término de 60 días a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. Se le apercibe que incumplir con lo aquí ordenado podría dar lugar al inicio de un procedimiento de desacato en el Tribunal de Primera Instancia.

El Alguacil de este Tribunal deberá incautar la obra y el sello notarial del señor Medina Torres y entregarlos al Director de la Oficina de Inspección de Notarías para el examen e informe correspondiente a este foro.

Notifíquese personalmente al señor Medina Torres esta Opinión *Per Curiam* y Sentencia.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:


Juan E. Medina Torres
     (TS-5853)                    AB-2007-0096




                         SENTENCIA


En San Juan, Puerto Rico, a 22 de junio de 2018.

     Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, suspendemos inmediatamente al Lcdo. Juan E. Medina Torres del ejercicio de la abogacía por un término de 3 meses y del ejercicio de la notaría inmediata e indefinidamente. Se le impone el deber de notificar a todos sus clientes sobre su inhabilidad para continuar representándolos y devolverles cualesquiera honorarios recibidos por trabajos no realizados. Deberá además informar inmediatamente de su suspensión a los foros judiciales y administrativos en que tenga asuntos pendientes. El licenciado deberá acreditar a este Tribunal el cumplimiento con lo anterior dentro del término de 30 días a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiere conllevar que no se le reinstale al ejercicio de la abogacía cuando lo solicite.

     Por último, se le ordena al señor Medina Torres a corregir a sus expensas los defectos en las escrituras núm. 1 y 2 de 1994 de forma definitiva dentro del término de 60 días a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. Se le apercibe que incumplir con lo aquí ordenado podría dar lugar al inicio de un procedimiento de desacato en el Tribunal de Primera Instancia.

El Alguacil de este Tribunal deberá incautar la obra y el sello notarial del señor Medina Torres y entregarlos al Director de la Oficina de Inspección de Notarías para el examen e informe correspondiente a este foro. La fianza notarial queda automáticamente cancelada. La fianza se considerará buena y válida por 3 años después de su terminación debido a los actos realizados por el señor Medina Torres durante el periodo en que la misma estuvo vigente.

Notifíquese personalmente al señor Medina Torres esta Opinión *Per Curiam* y Sentencia.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


                                        Juan Ernesto Dávila Rivera
                                    Secretario del Tribunal Supremo